UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
:
SECURITIES AND EXCHANGE :
COMMISSION, :
:
       Plaintiff, : ORDER
: 06-CV-6360 (JFB)(WDW)
          – against – :
:
PETER J. DAWSON, BMG ADVISORY :
SERVICES, LTD., ETHAN THOMAS CO., INC., :
:
       Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JOSEPH F. BIANCO, District Judge:

      On November 30, 2006, the Securities and Exchange Commission ("SEC") initiated the above-entitled action against defendants Peter J. Dawson ("Dawson"), and two investment advisory corporations owned by Dawson, BMG Advisory Services, Ltd. ("BMG"), and Ethan Thomas Co., Inc. ("Ethan Thomas") (collectively, "defendants"), alleging violations of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, and the Investment Advisers Act of 1940. Also on November 30, 2006, the Honorable Arthur D. Spatt, United States District Judge, issued a temporary restraining order ("TRO") that, *inter alia*, ordered the defendants to "hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds or other property (including money, real or personal property, . . . or other property of any kind whatsoever) of, held by, or under the direct

1

or indirect control of the Defendants . . . in whatever form such assets may presently exist."[1] (Temporary Restraining Order dated November 30, 2006 (hereinafter, "TRO").)

On February 20, 2007, Craig D. Robins, Esq. ("Robins"), submitted a motion asking this Court to modify the TRO. Specifically, Robins seeks an order permitting him to liquidate four Mont Blanc pens ("the pens") that Dawson gave to Robins as collateral for legal services performed by Robins. For the reasons that follow, Robins' motion is denied.

## I. Background

The Court presumes the parties familiarity with the underlying facts of this case, and, thus, briefly recites those facts necessary to resolve the instant motion. The following facts are undisputed, unless otherwise noted.

As noted *supra*, on November 30, 2006, Judge Spatt issued a TRO that, *inter alia*, barred Dawson from transferring any of his assets. (TRO, Part II.) According to plaintiff, the SEC served Dawson's counsel, Peter Tomao ("Tomao"), with a copy of the signed TRO by facsimile on November 30, 2006. (Brown Decl., ¶ 2.) However, according to Tomao, he did not receive a copy of the signed TRO until it was delivered to him by a process server on December 4, 2006. (Tomao Decl. ¶ 3.) Thus, according to Tomao, he did not inform Dawson of the directives contained within the TRO until December 4, 2006. (*Id.* ¶ 6.) Similarly, according to Robins, he did not receive notice of the terms of the TRO until December 4, 2006. (Robins Decl. ¶ 11.)

On December 3, 2006, Dawson transferred the pens to Robins as collateral for legal services provided by Robins. (Robins Jan. 3, 2007 Decl. ¶ 4.) At that time, Dawson and Robins executed an agreement which stated that Dawson was giving the pens to Robins "to hold as

---

[1] This case was reassigned to the undersigned on March 13, 2007.

security towards legal fees due and that will be due," and that the pens "[would] be returned upon payment of the next retainer sum of $7,500." (Robins Ex. A.) The agreement also gave Robins the right to "liquidate the pens" if Dawson did not pay Robins' legal fees within ninety days of the agreement. (*Id.*) According to Robins, due to the entry of the TRO, and the accompanying freeze on Dawson's assets, Dawson has been unable to pay "the next retainer sum of $7,500." (*Id.*)

## II. Discussion

"It is clear that any funds held in an attorney's trust account remain[] the property of the payor." *S.E.C. v. Princeton Econ. Intern. Ltd.*, 84 F. Supp. 2d 443, 446 (S.D.N.Y. 2000) (citing *Gala Enters., Inc. v. Hewlett Packard Co.*, 970 F. Supp. 212, 217 (S.D.N.Y. 1997) ("As a general matter, funds kept in an escrow account, such as an [attorney trust account], are funds of the client held by the attorney in his fiduciary capacity."); *see S.E.C. v. Credit Bancorp, Ltd.*, 109 F. Supp. 2d 142, 145 (S.D.N.Y. 2000). Thus, where a client transfers assets to an attorney in trust, it is beyond doubt that the assets continue to be the property of the client, and that the attorney merely serves as a "custodian" thereof. *See Princeton Econ. Intern. Ltd.*, 84 F. Supp. 2d at 446. Therefore, the effect of any order relating to the client's property must necessarily extend to such property notwithstanding that it is held by the client's attorney in trust.

Here, it is clear that the pens continued to be Dawson's property after he executed the agreement with Robins. The agreement expressly provides that Robins is "to hold [the pens] as security towards legal fees due and that will be due," and that the pens "will be returned upon payment of the next retainer sum of $7,500." (Robins Ex. A.) Therefore, even assuming *arguendo* that Dawson and Robins did not receive notice of the TRO until *after* Dawson

transferred the pens to Robins, the pens were still subject to the TRO because they continued to be "property . . . held by" Dawson following the execution of the agreement between Dawson and Robins. (TRO, Part II.); *see Credit Bancorp*, 109 F. Supp. 2d at 144-45 ("[The] Funds were still held in the Trust Account at the hour of the signing of the freeze order, and were the property of the client . . . at that moment.") (internal quotation marks and citation omitted).

Robins argues that the rule applied above should not control the outcome of the instant case because (1) Robins held the pens pursuant to a purported "security agreement" with Dawson, rather than pursuant to a trust agreement, and (2) Robins is a secured creditor of the pens, as defined by the Uniform Commercial Code ("UCC"). (*See* Robins' Mem. at 9-10.) The Court rejects Robins' arguments. First, regardless of the label affixed to the parties' agreement, it is undeniable that the pens continued to be the property of Dawson even after the agreement was executed, and that Dawson merely held the pens as security for a debt rather than assuming title to the pens. Second, Robins fails to cite any binding authority in support of the proposition that his status as a secured creditor entitles him to receive assets from Dawson notwithstanding the pendency of the TRO. Accordingly, because the TRO bars Dawson from transferring his property in order "to protect this Court's ability to award" relief to potential victims of Dawson's alleged misconduct (TRO, Part II), the Court denies Robins' motion to liquidate certain assets transferred to him by Dawson.[2]

---

[2] The Court notes that Tomao is the attorney of record in this action. Robins has not filed a notice of appearance, and states that he no longer attends court conferences in this matter. Furthermore, in an order dated February 27, 2007, Judge Spatt ordered the release of $50,000 held by Dawson as payment for attorney Tomao's fees. Accordingly, "this is not a case in which defendant [Dawson] has been prevented from retaining the counsel of his choice because of the freezing order." *S.E.C. v. Sekhri*, No. 98 Civ. 2320 (RPP), 2000 WL 1036295, at *2 (S.D.N.Y. July 26, 2000).

III. Conclusion

For the foregoing reasons, Robins' motion is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

Dated: August 27, 2007
Central Islip, NY